THE BROOKLYN PARK COMMISSIONERS *v.* JAMES ARMSTRONG.

(GENERAL TERM, SECOND DEPARTMENT, JANUARY, 1871.)

The act providing for the taking of lands for a park in Brooklyn (chap. 340, Laws 1861) declares, that on payment of the value of the lands, ascertained in the manner directed, to the former owners, they shall "vest forever in the city of Brooklyn."—*Held*, that the city took a fee simple in the lands obtained under the statute.

The legislature having appropriated certain lands as a public park in Brooklyn, and provided for an assessment and payment of the value thereof to the owner, and declared that thereupon the same should vest forever in the city.—*Held*, that it might afterward authorize a sale and conveyance by commissioners, on behalf the city, of part of such lands which had not in fact been used and improved as a park.

The act directing the taking of the lands (chap. 340, Laws 1861), authorized the issue of bonds to provide payment therefor, and declared that all the lands embraced within the boundaries of the park were specifically pledged for redemption of the bonds.—*Held*, that an act of the legislature (Laws 1870, chap. 273), authorizing a sale of land as stated above, was not unconstitutional as impairing the obligation of contracts.

THIS was a submission upon a case agreed without action under section 372 of the Code.

*John N. Taylor and J. M. Van Cott*, for the plaintiff.

*William W. Goodrich*, for the defendant.

Present—JOSEPH F. BARNARD, P. J., GILBERT and TAPPEN, JJ.

By the Court—GILBERT J.    The parties having agreed upon a case containing the facts upon which the controversy depends, have presented a submission of the same to this court for determination, pursuant to section 372 of the Code of Procedure.

The facts are these: By the act of the legislature (chap. 466, Laws of 1859), commissioners were appointed to select and locate grounds for a park in or adjacent to the city of Brooklyn, and to report to the next legislature.    They made their selection, and reported to the legislature of 1860, which passed an act (chap. 488, Laws of 1860), amended in 1861 (chap. 340), by which a board of park commissioners was appointed, and a tract of land lying on both sides of Flatbush avenue was declared from and after the passage of the act to be deemed to have been taken by the city for public use, as and for a public park, and to have been opened as a public place, with the same effect as if the whole of the same had been taken and declared open under the provisions of the charter of the city (chap. 144, Laws of 1850), except as otherwise provided by the act.    Commissioners of estimate and assessment were to be appointed by the Supreme Court, in the manner provided by the act relative to Fort Green (chap. 142, Laws of 1817), who were directed to make just and true estimates of the value of the lands and of the loss and damage to the respective owners, lessees, parties and persons respectively entitled thereto, or interested in the same, together with the tenements, hereditaments and appurtenances, privileges or advantages to the same belonging or in any wise appertaining, by and in consequence of relinquishing the same to said city (§ 4), "which amounts were to be due and payable immediately upon the confirmation of said report. (Section 4.)    The report was declared to be final and conclusive upon the city, the owners and all other persons;" and upon the confirmation of any such report, and upon payment being made to the owners of the lands in such report mentioned, or upon their assent thereto by deed duly executed, the said lands were " to vest forever in the city of Brook'yn,

for the uses and purposes of this act mentioned." (Section 8.)
Bonds of the city would be issued to pay the awards, and the
property of the city and the lands taken by virtue of the act
were specifically pledged for their payment. In 1865 an act
was passed (chap. 603) entitled "An act to change the bounda-
ries of Prospect park, in the city of Brooklyn," authorizing
the commissioner to acquire for the purposes therein mentioned
an oval-shaped piece of land for an entrance to the park. (Sec-
tion 1.) It provided that this land, as well as other lands men-
tioned in the act of 1861, should, "from and after the passage
of this act, be deemed to have been taken by the city as and for a
public park, and the commissioners' map shall be altered to cor-
respond therewith." (Section 2.) Commissioners were to be
appointed, as before, to estimate the value of the land, and also
all the estate, right, title and interest in all other lands hereto-
fore taken by the act of 1861 remaining in the owners thereof,
and the loss and damage to be sustained by them in consequence
of their relinquishing the same to the city. (Section 3.) "And
the title of the lands mentioned in (their) such report shall, after
such confirmation, vest forever in fee-simple absolute in the
said city of Brooklyn, and the said lands shall thenceforth
form part of Prospect Park." (Section 5.) For the payment of
the awards and the redemption of the bonds issued under the act
and the act of 1861, "all the lands embraced within the bound-
aries of the said park, including those now taken, are hereby
specifically pledged." (Section 6.) That part of the land lying
east of Flatbush avenue was never used and improved as a park,
and has laid waste till the present time. In 1870 an act was
passed (chap. 373), entitled, "An act to authorize the improve-
ment and sale of certain portions of Prospect park, in the city
of Brooklyn." It authorized the commissioners, for and in
behalf of the city, to sell the land east of Flatbush avenue
(§ 1) by deeds, with or without warrantee, which deeds should
vest in the grantees an absolute title in fee-simple. (Section 2.)
The proceeds of sales to be devoted to the sinking fund for the
redemption of park bonds. (Section 3). After deeds are given,
" all liens, rights and claims, by way of easement or otherwise,

into, over or upon the lands * * shall be terminated and extinguished." (Section 4.)   The case states that this act was passed "in order to furnish a better and more satisfactory security for bonds."   In pursuance of this act the commissioners sold one lot to the defendant, who refuses to take the title, alleging that the act of 1870 is unconstitutional, and that neither the city nor the commissioners can give a valid title to the fee, free from all encumbrance.

The question to be determined is whether a conveyance to the defendant of the premises in question, executed in pursuance of the said act of 1870, will vest in him a good title in fee thereto.

It is objected that an absolute title in fee-simple was not acquired under the act of 1861, and that the act of 1865 violates section 16 of article 3 of the Constitution.

We do not deem it necessary to decide upon the validity of the last named act, for we are clearly of opinion that the language of the act of 1861 imparts a title in fee-simple. This act makes provision for ascertaining the value of the lands taken in the mode provided by the Constitution, for the payment of such value to the former owner, and then declares that thereupon said lands shall vest forever in the city of Brooklyn.   Full effect cannot be given to the words "shall vest forever" without divesting the entire estate of the former owner, and vesting it in the city of Brooklyn; and such we think was the intention of the legislature.   Where an individual buys land and pays for it, he becomes entitled to a conveyance in fee-simple, and we can perceive no good reason why the same effect should not be given to a purchase made in behalf of the State.   While, therefore, the private interest of the citizen is never to be sacrificed to a greater extent than is necessary, to secure the particular public object; yet the State is considered in all such transactions as an individual treating with an individual for an exchange. All that the legislature does, is to oblige the owner to alienate his property for a reasonable price.   The constitutional restriction upon the power of the legislature on this subject

at most only prohibits a taking of it for a private use, and requires a just compensation to be made. But it contains no restriction whatever, express or implied, upon the power of the legislature to decide whether a necessity for taking the property exists, and if land is to be taken what estate in it shall pass.

In the taking of other property, no one would doubt that an absolute title might be acquired. If, for example, in time of war, government were to take timber for a ship of war, or horses for the army, and pay for them, no one would suppose that the owner could reclaim his property after the war was over, or that the government having ceased to use it, could not sell it and give a good title to it. And yet the provision of the Constitution on this subject applies to all property alike, and makes no distinction between land and chattels. Whether an absolute or qualified title has been acquired, therefore, must be determined by a construction of the legislative act. We have already expressed the opinion that the legislature intended to acquire, and did acquire, a fee simple absolute in the lands taken for the park. It follows, that the legislature may authorize a sale or any other disposition of the lands as the public welfare or convenience ever may demand. They certainly have as complete a dominion over property belonging to the State as any private owner has over property owned by himself. The right of alienation is an inseparable incident of every ownership.

Does the case show an attempt to transfer private property from one man to another?

There is no ground for saying that the case shows an attempt to transfer private property from one man to another. When the property was taken, it was acquired in good faith, for a legitimate public use. The legislature had the unquestioned right to create a large or small park, and to take as much land as they deemed necessary. Their right to diminish the size of the park, and to sell the land no longer needed whenever the public interest will, in their judgment, be promoted by it, is also unquestionable. The case shows such a

public exigency, and we have no doubt of the power of the legislature to meet it by authorizing a sale of any part of land originally taken. Indeed, the question of the power of the legislature to acquire an absolute estate in land, and to sell the same when no longer needed for public use, cannot now be considered an open one in this State. (*Heyward* v. *The Mayor*, 3 Selden, 314; *Rexford* v. *Knight*, 11 N. Y. R.)

It only remains to notice one other objection taken by the defendant White, relating to the effect of the pledge contained in the act of 1861, of the lands authorized to be taken, together with all the property of the city of Brooklyn, for the payment of the bonds, issued for the purchase of said lands. It is claimed, in behalf of the defendant, that it creates a contract between the public and the bondholder, the obligation of which the act of 1870 seeks to impair, and that therefore the latter act is void by reason of that provision of the United States which prohibits any State from passing any law impairing the obligation of contracts. The answer to this is, that no contract was created. The act of 1861 is merely restrictive of the corporate power of the city of Brooklyn in respect to the lands so taken and other property, and in no sense affects the power of the legislature over the same.

Upon the whole, we are of opinion that the plaintiffs are entitled to judgment.